**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 21-63-DLB**

**NAUTILUS INSURANCE COMPANY**                                                      **PLAINTIFF**

**v.**                              **MEMORANDUM OPINION AND ORDER**

**KC DIAMOND SPORTS STUDIO, LLC**
**and JANE DOE**                                                                     **DEFENDANTS**

\* \* \* \* \* \* \* \* \* \* \*

## I.      INTRODUCTION

This matter is a declaratory judgment action filed by Nautilus Insurance Company ("Nautilus"), in which Nautilus seeks a declaration of rights under 28 U.S.C. § 2201 with respect to an insurance contract.  In addition to the Complaint for Declaratory Relief (Doc. # 1), there are two pending defensive Motions before the Court.  A Motion to Dismiss, or in the alternative, Motion to Stay, has been filed by Defendant KC Diamond Sports Studio, LLC ("KC Diamond") (Doc. # 20), and has been fully briefed.  (Docs. # 23 and 25).  Additionally, Defendant Jane Doe has filed a Motion to Dismiss (Doc. # 22), which has also been fully briefed (Docs. # 24 and 28), and both Motions are now ripe for the Court's review.  For the reasons stated herein, the Motions to Dismiss (Docs. # 20 and 22) are **granted**, and the Court **declines** to exercise its discretionary jurisdiction over this declaratory judgment action under 28 U.S.C § 2201.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

KC Diamond Sports Studio is a small business in Ashland, Kentucky that provides a training location for baseball, softball, gymnastics, and tumbling.  (Doc. # 1-1 ¶ 6).  Jane Doe is an Ohio resident who suffered a sexual assault while training at KC Diamond in 2017.  (*See, e.g.*, Doc. # 1 ¶ 15).  Jane Doe's assailant was Joey Payne, a softball coach that she trained with at the KC Diamond practice facilities.  (*Id.*).  In 2018, Mr. Payne was charged and pled guilty in state court to Third Degree Sodomy and First-Degree Sexual Abuse, stemming from his misconduct toward Jane Doe.  (*Id.*).  One year later, in 2019, Jane Doe filed a civil action in Boyd Circuit Court against Mr. Payne and KC Diamond, alleging negligence, negligent hiring and supervision, premises liability and vicarious liability against KC Diamond; and sexual assault, assault, battery, and false imprisonment against Mr. Payne.  (Doc. # 1-1 at 5-8).  That case is still pending in Boyd Circuit Court, and notably, Nautilus Insurance Company is not a party to the case.  (*See id.*).  However, Nautilus is nonetheless involved in the case, as it holds a commercial insurance policy issued to KC Diamond, and Nautilus has been defending KC Diamond in the state court case since its inception, subject to a reservation of rights.  (Doc. # 24 at 1).

After two years of defending KC Diamond in state court, Nautilus filed this case in federal court, seeking a declaratory judgment with respect to its obligations and liabilities under its insurance policy.  (Doc. # 1 ¶¶ 28, 33, 40).  The Nautilus policy at issue provided general liability coverage to KC Diamond at a $1,000,000 limit per occurrence and a general aggregate limit of $2,000,000 from January 28, 2017 to January 28, 2018, which includes the period during which Jane Doe suffered sexual abuse at the studio.  (*Id.* ¶ 20).  However, as is the case with most insurance policies, the Nautilus policy contained

several exception and exclusion clauses, and it now seeks to use those clauses to excuse it from a duty to defend, and to avoid liability for a judgment that may be entered against KC Diamond in the state court action, (*see generally id.*).

More specifically, Nautilus' Complaint for declaratory relief turns on three clauses contained in the insurance contract: an Abuse or Molestation Exclusion, a Punitive or Exemplary Damages Exclusion, and a Bodily Injury Definition.  (*Id.* ¶¶ 22, 30, 35).   In citing these clauses in the contract, Nautilus asks the Court to declare that the contract bars coverage and liability for the claims asserted in the state court lawsuit, and that Nautilus has no duty to defend or indemnify KC Diamond.  (*E.g.*, *id.* ¶ 33).  The clauses specifically state as follows, in relevant parts:

<u>**ABUSE OR MOLESTATION EXCLUSION**</u>

. . . This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of:

(1)   The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or

(2)   The negligent

(a)   Employment;

(b)   Investigation;

(c)   Supervision;

(d)   Reporting to the proper authorities, or failure to so report; or

(e)   Retention;

Of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1 above.  (Doc. # 1-2 at 32).

## EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES

This insurance does not apply to punitive or exemplary damages.  (*Id.* at 40).

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**(1)    Insuring Agreement**

(a)    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

(b)    This insurance applies to "bodily injury" and "property damage" only if:

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)    The "bodily injury" or "property damage" occurs during the policy period; and . . .

(e)    Damages because of "bodily injury" include damages claimed by any person or organization for the care, loss of services or death resulting at any time from the "bodily injury." . . .

(36)    The Nautilus Policy defines "bodily injury" as follows:

## SECTION V – DEFINITIONS

(3)    "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.  (*Id*. at 12, 24).

In July 2021, KC Diamond filed an Answer to the Complaint (Doc. # 8), in which it makes various affirmative defenses in addition to requesting a jury trial.  KC Diamond's

Motion to Dismiss followed in September 2021 (Doc. # 20), and Jane Doe filed her Motion to Dismiss shortly thereafter.  (Doc. # 22).  At the time of this Order's entry, Jane Doe has not filed an Answer to the Complaint.  The state court action remains set for jury trial on August 22, 2022 in Boyd Circuit Court.  *See Jane Doe v. KC Diamond Sports Studio, LLC, et al.*, No. 19-CI-299 (filed Apr. 12, 2019).[1]  While the two Motions to Dismiss are both pending before the Court, they address the same issue: whether the Court should exercise jurisdiction over this matter under the Declaratory Judgment Act.  (*See* Docs. # 20 and 22).  Accordingly, the Court will address the jurisdictional questions by the same analysis.

## III.    ANALYSIS

### A.    Standard of Review

The Declaratory Judgment Act provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  In situations where an insurance company seeks a declaration of rights in relation to a concurrently proceeding state court tort action, federal courts are not required to hear a declaratory judgment action.  *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494-95 (1942); *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir.

---

[1]    Docket accessed via KYeCourts on June 18, 2022.  In deciding a Motion to Dismiss, a court "may consider the Complaint and any attached exhibits attached thereto [and] public records . . . so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).  Here, the underlying state court lawsuit is referred to throughout the Complaint for declaratory relief, and the status of the underlying lawsuit, including pleadings therein, are public records that are central to the declaratory judgment jurisdiction analysis.

2004).  Rather, the Declaratory Judgment Act "confer[s] on federal courts the unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); *accord W. World Ins. Co. v. Hoey*, 773 F.3d 755, 758 (6th Cir. 2014).

In the Sixth Circuit, the exercise of jurisdiction in a declaratory judgment action is guided by five factors, known as the *Grand Trunk* factors, after the case from which they originate:

(1)   Whether the declaratory action would settle the controversy;

(2)   Whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3)   Whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or to 'provide an arena for a race for res judicata;'

(4)   Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction;

   (a)   Whether the underlying factual issues are important to an informed resolution of the case;

   (b)   Whether the state trial court is in a better position to evaluate those factual issues than is the federal court;

   (c)   Whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action; and

(5)   Whether there is an alternative remedy which is better or more effective.

*Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 29 F.4th 792, 796-97 (6th Cir. 2022) (citing *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)); *see also White Pine Ins. Co. v. McIntosh*, No. 5:21-238-KKC, 2022 WL 2512771, at *2 (E.D. Ky. July 6, 2022) (listing the factors with all sub-factors included) (citing *Hoey*, 773 F.3d at 759).  The factors are not weighted in any way, and they "are

6

not always considered equally," as the factors are instead used to broadly conduct "a reasoned analysis of whether issuing a declaration would be useful and fair." *Cardinal Health*, 29 F.4th at 797 (quoting *Hoey*, 773 F.3d at 759).  In other words, the factors "embody three main principles – efficiency, fairness, and federalism."  *Brit UW Ltd. v. Smith*, 401 F. Supp. 3d 804, 810 (E.D. Ky. 2019) (citing *Hoey*, 773 F.3d at 759).

Before moving into the analysis of those factors, however, the Court will address an issue raised by Nautilus as a threshold matter – whether the *Grand Trunk* factors are applicable to this case.  Boldly, Nautilus has stated that "this Court need not even consider the *Grand Trunk* factors because *Brillhart/Grand Trunk* are clearly inapplicable to this matter" (Doc. # 24 at 6; *see also* Doc. # 23 at 4), as Nautilus is not a party to the state court action.  Following that statement, however, Nautilus has briefed extensively on the *Grand Trunk* factors only for what it calls "the sake of discussion."  (Doc. # 23 at 4).

Put simply, Nautilus' assertion is incorrect and borders on disingenuous.  This Court is unaware of any controlling case in which the *Grand Trunk* factors have not been applied due to an insurance company plaintiff not being a party to an underlying state court action.  In fact, in the two cases Nautilus has cited to support its assertion, each court applied the *Grand Trunk* factors in making its decision, and to an insurance company that was not a party to the state court action.  *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 550, 554 (6th Cir. 2008) (noting that "Scottsdale was not joined as a defendant in the state court action," later listing the *Grand Trunk* factors and applying them to the case); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 451, 454 (6th Cir. 2003) (noting that insurance company was not a party to the state court action, but that it filed the federal declaratory judgment action "seeking to determine its

7

obligations under its policy" with a state court defendant, and later addressing the *Grand Trunk* factors).

Furthermore, the excerpts quoted and cited by Nautilus, and held out to be dispositive in favor of its assertion that the *Grand Trunk* factors are inapplicable, were even pulled from sections of these cases where the Sixth Circuit was applying the *Grand Trunk* factors.  (Doc. # 24 at 5-6) (quoting *Flowers*, 513 F.3d at 556, and bolding a sentence in which the Sixth Circuit was addressing the first factor);  (*Id.* at 6) (quoting *Northland*, 327 F.3d at 454, in which the Sixth Circuit was only addressing the fourth factor).  In short, the *Grand Trunk* factors are applicable and controlling on this case, and thus, having resolved the issue of applicable law, the Court will move into addressing each of the *Grand Trunk* factors in turn.

## B.   Factors One and Two: Will the Declaratory Action Settle the Controversy and Clarify the Legal Relations In Issue?

The first two *Grand Trunk* factors are routinely considered together, as a declaratory judgment that settles the controversy will almost certainly also clarify the legal relations in issue.  *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 397 (6th Cir. 2019).  In the Sixth Circuit, "two lines of precedent seem to have developed" with respect to the first factor "in the context of an insurance company's suit to determine its policy liability."  *Hoey*, 773 F.3d at 760 (quoting *Flowers*, 513 F.3d at 555).  The court in *Hoey* summed up these distinct lines of precedent well:

> One line of cases holds that these two factors relate to whether the declaratory judgment would settle the *underlying* state-court controversy— that is, the tort action brought by the injured party against the insured—or would at least clarify the legal relationship between the parties in the underlying state court controversy.  The other line of cases directs the

8

district court to focus on the controversy between the parties in the declaratory-judgment action—that is, between the insurer and the insured.

*Id.* (internal citations omitted) (emphasis in original).  Albeit confusing, as our sister court has written, "this incongruence results from the 'different factual scenarios' that each line of cases presents."  *United Specialty Ins. Co. v. Cole's Place, Inc.*, No. 3:17-CV-326-TBR, 2018 WL 1914731, at *4 (W.D. Ky. Apr. 23, 2018), *aff'd*, 936 F.3d at 386 (6th Cir. 2019).  In other words, because the first factor requires the court to determine "on the facts of each case whether a judgment will settle the controversy," the relevant facts determine which line of cases should apply.  *Cole's Place*, 936 F.3d at 398.

The first line of cases hold that a declaratory judgment will not "settle the controversy" where it fails to settle the *entire* underlying case in state court.  *See Mass. Bay. Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F. App'x 431, 436 (6th Cir. 2018) (internal citations omitted).  These cases often involve the state court plaintiff not being joined in the federal action and deal heavily with factual issues also at issue in state court.  *White Pine*, 2022 WL 2512771, at *5 (internal citations omitted).  On the first line's reasoning, the first factor is not satisfied where "the ongoing state-court litigation can reach the same issues, and the insurer can be joined in that litigation or can defend against an indemnity action later brought by the state-court defendant."  *Cole's Place*, 936 F.3d at 397.  For example, in *Bituminous*, the Sixth Circuit found that the first factor was not satisfied where the coverage determination turned on whether the injured party was an employee at the time of his injury, a "fact-based" and "very close" question of state law that was also being considered in the state court proceeding.  373 F.3d at 813.

The second line of cases focuses only on the declaratory judgment action and usually deems the controversy to be settled because the declaratory judgment "resolves

9

the dispute between the insurer and the insured over who will pay for the state court litigation." *Id*.  In these cases, "a technical or legal issue is often at the heart of the coverage controversy, and to the extent the facts of the underlying case matter, they are undisputed." *Cole's Place*, 2018 WL 1914731, at *4 (internal quotations omitted).  The second line of reasoning is illustrated by *Northland*, in which the Sixth Circuit concluded the first factor was satisfied where the "district court was fully capable of determining the nature of the coverage provided by the contract of insurance, and the determination did not have to await the resolution of factual issues in the state action."  327 F.3d at 454.

In sum, the differences between these lines of cases and where their analyses lead depend on the facts at hand.  *Flowers*, 513 F.3d at 555.  This Court has previously summarized some of the relevant facts to be considered as follows:

> The [*Flowers*] Court . . . instruct[s] courts to look at the underlying facts; i.e. whether the question was already being or could be considered in state court, whether the parties were the same in state and federal court, whether parties in the state action would be bound by the federal court action to which they were not a part, whether the issue was one being developed by state court discovery, and whether the scope of coverage or obligation to defend was before the state court.

*White Pine*, 2022 WL 2512771, at *5 (quoting *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 786 (E.D. Ky. 2008)).

First, the Court will examine the procedural considerations: whether the parties here are the same in state and federal court, and whether the parties in the state action would be bound by a federal action to which they were not a part.  As previously stated, Nautilus is not a party to the state court action, *see supra* part II, and in raising those issues in this Court, Nautilus has sued the state court plaintiff, Jane Doe, as well as the relevant state court defendant, KC Diamond.  Thus, no party involved in the state court

suit which isn't also a party to this action would be affected by a declaratory judgment issued by this Court, as the remaining state court defendant is not a Nautilus beneficiary. At first glance, it seems that these facts would weigh in favor of asserting jurisdiction, but in the Court's view, they are overruled by other considerations – specifically, those considerations related to the factual questions intertwined in Nautilus' policy exclusions.[2]

In determining whether this case presents factual issues that are also being decided in the state court action, the Court notes that Nautilus has raised two separate and distinct issues in its Complaint: whether it has a duty to defend, and whether it has a duty to indemnify. (*See, e.g.,* Doc. # 1 ¶ 33(c)). In briefing on the instant Motions, Nautilus has written that the duty to defend encompasses the duty to indemnify, and that the relevant inquiry is an "entirely legal (not factual) dispute," citing *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503 (6th Cir. 2003). (Doc. # 24 at 9). While *Tech Dry* does stand for the proposition that "a court should determine at the outset of litigation whether an insurance company has a duty to defend its insured by comparing the allegations in the underlying complaint with the terms of the insurance policy[,]" that case was resolving a summary judgment motion *after* the Court decided to exercise jurisdiction. 336 F.3d at 507 (citing *DiBeneditto v. Med. Protective Co.*, 3 F. App'x 483, 485 (6th Cir. 2001)). Furthermore, the quoted sentence from *Tech Dry*, relied upon extensively by Nautilus, (*see, e.g.*, Doc. # 24 at 8-9), only refers to the duty to defend, and expressly states that the principle arises from Kentucky law. 336 F.3d at 507. For purposes of assessing jurisdiction, the duty to defend and the duty to indemnify must be considered separately,

---

[2]    The Court later addresses the extent to which those factual issues are involved in the underlying state court case during the analysis of the fourth factor, *infra* part III.D.1, but here only notes that factual issues are contained within the policy exclusions, which weighs against "settling the controversy" for the first factor.

because while the duty to defend is a legal question, the duty to indemnify may involve questions of fact.

As previously stated, Nautilus is correct that factual determinations are not required with respect to the duty to defend because "[t]he determination of whether a defense is required must be made at the outset of litigation." *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991). Because that determination is made at the outset of litigation, it is done "by reference to two documents: the complaint and the policy."[3] *Cole's Place*, 936 F.3d at 399-400 (citing *id.*). Thus, to determine whether Nautilus has a duty to defend KC Diamond in the state court lawsuit, the Court would only need to look at the policy and compare it to the complaint filed in state court – meaning that no factual determinations would be necessary.

However, Nautilus has not asked the court to declare its rights only with respect to a duty to defend – it has asked the court to also consider a duty to indemnify. (*E.g.*, Doc. # 1 ¶ 28(c)). Nautilus has based most of its argument on the premise that the duty to defend encompasses the duty to indemnify, and it is correct, as when a party "does not have a duty to defend . . . , neither does it have a duty to indemnify," *Nat'l Union Fire Ins. Co. v. United Catalysts, Inc.*, 182 F. Supp. 2d 608, 610 (W.D. Ky. 2002). However, Nautilus' argument, foreclosing on the possibility of any duty to indemnify, is prefaced on a *lack* of a duty to defend, which would require a ruling on the merits of its claim.[4] At this

---

[3]      *But see infra* note 5.

[4]      Furthermore, the state court litigation proceeded for two years with Nautilus defending KC Diamond subject to a reservation of rights before Nautilus filed its declaratory judgment action. (Doc. # 24 at 1). Thus, it seems that in terms of the duty to defend and the duty to indemnify, the latter seems more relevant than the former, given that the matter is approaching trial and an ultimate determination of liability is forthcoming.

stage, while the Court considers jurisdiction, the Court is not making a ruling on the merits. Instead, the Court here examines the case assuming that all possibilities are open, and that all relevant issues, including the duty to indemnify, will need to be examined.  In other words, the Court is not deciding here whether either duty exists – only whether the Court should consider each question, and in terms of the distinct processes that each question requires.  For that reason, the Court will analyze Nautilus' claims with respect to both the duty to defend and the duty to indemnify.

A separate analysis is important because the duty to indemnify is "separate and distinct" from the duty to defend.  *James Graham Brown*, 814 S.W.2d at 279.  In Kentucky, the duty to indemnify "is a question of law to be determined *after* the facts have been determined by a jury."  *White Pine*, 2022 WL 2512771, at *7 (citing *York v. Petzl Am., Inc.*, 353 S.W.3d 349, 353 (Ky. Ct. App. 2010)) (emphasis in original).  As such, a duty to indemnify cannot be resolved where material facts are in dispute.  *Id*.  In this case, material facts are very much in dispute, as the Boyd Circuit Court denied summary judgment (Doc. # 22-11), and the matter remains set for trial.

Nautilus has fervently argued that the "purported 'issues of fact' are either irrelevant to the adjudication of this case and/or would be decided in *this case* by comparing the allegations in the underlying complaint with the terms of the insurance policy."  (Doc. # 23 at 7) (emphasis in original).  However, as previously stated, the complaint-comparison analysis only applies to the duty to defend, not the duty to

indemnify,[5] and so Nautilus' argument rests on its remaining assertion that the unresolved issues of fact in the state court are "irrelevant to the adjudication of this case." (*Id.*).  A look at the language contained within Nautilus' policy exclusions makes clear that Nautilus is incorrect.

First, a declaration of rights with respect to Nautilus' Abuse or Molestation Exclusion would require the Court to determine first (1) that "actual or threatened abuse or molestation" occurred, and then (2) that Jane Doe was "in the care, custody, or control" of KC Diamond, (3) that KC Diamond negligently employed, investigated, supervised, or retained Joey Payne, (4) that KC Diamond "was legally responsible" for Joey Payne, or all of the above.  (*See* Doc. # 1-2 at 32).  In the state court lawsuit, Jane Doe asserts claims of general negligence, negligent hiring, negligent training, negligent supervision, premises liability, and vicarious liability against KC Diamond.  (*See generally* Doc. # 1-1).  In comparing the state court claims with the issues contained within the Abuse or Molestation Exclusion, significant overlap exists between the two, and in fact, the Exclusion contains many of the claims verbatim.  Consequently, it would be impossible for the Court to weigh in on Nautilus' duty to indemnify without examining those issues of fact.  And most importantly, those issues of fact remain outstanding.  In denying KC Diamond's Motion for Summary Judgment, the Boyd Circuit Court noted that "genuine issues of material fact relate to all" of Jane Doe's claims against KC Diamond.  (Doc. #

---

[5]     Additionally, the Court is somewhat perplexed by Nautilus' insistence that the complaint-comparison analysis is dispositive, as even Nautilus itself writes that "as the *Tech Dry* court held 'a court should determine *at the outset of litigation* whether an insurance company has a duty to defend its insured,'" (Doc. # 24 at 9) (emphasis in original), but Nautilus has filed its declaratory judgment action two years after the original complaint was filed in state court – hardly at the outset of litigation.  For that reason, the duty to indemnify seems even more relevant at the current juncture.

22-11 at 2).[6]  Because "the ongoing state-court litigation can [later] reach the same issues," and because the state court has already begun inquiring into the same issues, it seems apparent that this Court's weighing in would not "settle the controversy."  *Cole's Place*, 936 F.3d at 397.

The Court's conclusion here is further underscored by several factors that distinguish the instant case from *Cole's Place*, which Nautilus heavily relied upon in its arguments under the first factor.  (*See* Doc. # 24 at 7-8) (citing 936 F.3d at 397).  In *Cole's Place*, the Sixth Circuit upheld a district court's decision to exercise its discretionary jurisdiction over a declaratory judgment stemming from a nightclub shooting in Louisville. 936 F.3d at 391-92.  In that case, the insurance company relied on a policy exclusion related to bodily injury arising out of or resulting from assault and battery, and the district court ruled in the insurance company's favor.  *Id.* at 393-94.  In deciding that the first factor weighed in favor of exercising jurisdiction, the *Cole's Place* district court noted that "the factual issues before the state court relate only to whether Cole's Place acted unreasonably, negligently, intentionally, and/or maliciously in failing to adequately protect the plaintiffs when they were patrons at the nightclub."  2018 WL 1914731, at *5.  The facts in this case are not quite so simple, and much less straightforward.  In addition to KC Diamond's failure to protect Jane Doe, questions exist as to the studio's vicarious liability with respect to Mr. Payne, to the existence and extent of Jane Doe's injuries and whether they arise from Mr. Payne's actions, and to whether Jane Doe was in KC Diamond's custody, care, or control.  (*See* Doc. # 1-1).  In *Cole's Place*, vicarious liability wasn't at issue, as the shooter was not an employee, the victims were all patrons of a

---

[6]     *See supra* note 1.

business with clearly defined legal relationships to the venue, and the nature and extent of the injuries suffered by the plaintiffs was not in question.  2018 WL 1914721, at *2.  In other words, "the fact-finding that [occurred] in the state court [focused] solely on Cole's Place's acts and omissions, and . . . whether [another defendant] was the shooter."  *Id.* at *5.  Here, the fact-finding that will occur in the state court goes far beyond the acts and omissions of KC Diamond, and unfortunately for Nautilus, that fact-finding bears directly on its Abuse or Molestation Exclusion, as previously discussed.

The same issues apply with respect to Nautilus' Bodily Injury Definition.  To determine the duty to indemnify, the Court would have to find whether Jane Doe's damages constitute "bodily injury, sickness, and disease," and if yes, whether they were "caused by 'an occurrence' that [took] place in the 'coverage territory.'"  (Doc. # 1 at 8-9).  In support of its argument, Nautilus has posited that this "Court is [only] being asked to determine whether psychological damages are covered 'bodily injury' or not.  Whether the 'extent and nature' of any psychological injury is great or small is relevant to this 'covered or not' analysis."  (Doc. # 24 at 9).  But what Nautilus leaves out is that the type and extent Jane Doe's damages have not yet been proven, and as such, the Court cannot decide Nautilus' duty to indemnify without that information.  While the Court could make a prospective declaration that *if* Jane Doe is proven to have suffered certain types of damages, *then* Nautilus has no duty to indemnify, doing so would hardly "settle the controversy."

Furthermore, while Nautilus' Punitive and Exemplary Damages Exclusion is less entangled with the facts of the state court suit, the Court notes that in exercising discretionary jurisdiction, it would not be interested in resolving some, but not all, of

Nautilus' claims for the same reason as previously stated: doing so would only create piecemeal litigation between this Court and the state court and would fall far short of "settling the controversy."  In other words, this Court is not fully capable of determining the nature of the coverage without awaiting the resolution of factual issues in the state court action, and so exercising jurisdiction would not "settle the controversy" at hand.  *Cf. Northland*, 327 F.3d at 454.  Thus, the first *Grand Trunk* factor weighs against exercising jurisdiction.

As to the second *Grand Trunk* factor, exercising jurisdiction would only serve a very limited purpose in clarifying the legal relations in issue, for the same reasons previously discussed.  While a declaratory judgment from this Court would clarify the legal relationship between KC Diamond and Nautilus, it would not clarify the legal relationship between any of the other parties.  In fact, as previously reasoned, settling some of the factual issues involved in determining Nautilus' duty to indemnify, which is particularly relevant at this point in the litigation, could potentially complicate the legal relations in issue between other parties, as relevant facts overlap between the state court case and Nautilus' policy exclusions. The Court thus finds that the second factor also weighs against exercising jurisdiction.

### C.    Factor Three: Is the Declaratory Action Being Used as Procedural Fencing or a Race for Res Judicata?

The third *Grand Trunk* factor refers to "procedural fencing," which is "a range of tactics that courts regard as fair or unseemly, including selecting a forum to start a race for res judicata."  *Cardinal Health*, 29 F.4th at 797 (internal quotations omitted).  This factor "usually does not weigh heavily in the analysis," *Cole's Place*, 936 F.3d at 399, and in the absence of procedural fencing, the Sixth Circuit has found the factor to be both

17

neutral and weighing in favor of jurisdiction. *Cardinal Health*, 29 F.4th at 797 (collecting cases). Most often, "procedural fencing" in this context exists where the declaratory judgment plaintiff files suit "in apparent anticipation of litigation in state court." *Cole's Place*, 936 F.3d at 399 (citing *AmSouth Bank v. Dale*, 386 F.3d 763, 788-90 (6th Cir. 2004)). Conversely, "when the plaintiff files its claim after the underlying state court action, it should be given 'the benefit of the doubt that no improper motive fueled the filing of th[e] action.'" *White Pine*, 2022 WL 2512771, at *9 (quoting *Bituminous*, 373 F.3d at 814).

In this matter, the declaratory judgment action was filed after the underlying case began. (*Compare* Doc. # 1 *with* Doc. # 1-1). The Court thus provides Nautilus with the benefit of the doubt, and assumes that no improper motive is present. KC Diamond agrees with Nautilus, writing that it is "currently not aware of procedural fencing" (Doc. # 20-1 at 11), while Jane Doe briefly states that Nautilus "should not be allowed to preempt the plaintiff's choice of forum – which is state court." (Doc. # 22-1 at 13). Unfortunately for Defendants, Jane Doe's brief argument is not sufficient to overcome the presumption that no improper motive exists. As this Court stated in *White Pine*, "[u]nless there are actual indications of bad faith or improper motive, the mere fact that a declaratory judgment plaintiff chooses to adjudicate their dispute in a federal forum – a choice Congress has seen fit to give – should not be a consideration" in analyzing the third factor. 2022 WL 2512771, at *10 (citing *Flowers*, 513 F.3d at 558). No such actual indications have been provided here, and so the presumption will remain.

But a question nonetheless still exists as to whether a lack of improper motive weighs in favor of jurisdiction or remains neutral. Nautilus has posited that this factor

"weighs in favor of this Court's exercise of jurisdiction" (Doc. # 23 at 12), but the Court is inclined to disagree, as recent cases have trended toward a neutral finding in the absence of improper motive.  *See, e.g., White Pine*, 2022 WL 2512771, at *11; *Brit*, 401 F. Supp. 3d at 814.  More importantly, that conclusion was upheld in *Cardinal Health*, which is the most recent Sixth Circuit case addressing this issue.  29 F.4th at 798.  Accordingly, the Court will do the same here, and find that the third factor weighs neither in favor of nor against exercising jurisdiction.

### D. Factor Four: Will the Declaratory Action Increase Friction Between State and Federal Courts?

The fourth factor asks "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction."  *Grand Trunk*, 746 F.2d at 326.  Moreover, "like factors one and two, this factor focuses on the presence of novel or complicated state law or factual issues." *Frankenmuth Mut. Ins. Co. v. Balis Campbell, Inc.*, 510 F. Supp. 3d 482, 495 (E.D. Ky. 2020) (citing *Cole's Place*, 936 F.3d at 400).  In other words, this factor weighs against jurisdiction "when 'another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court.'"  *White Pine*, 2022 WL 2512771, at *11 (quoting *Flowers*, 513 F.3d at 559).  Nonetheless, "however, 'the mere existence of a state court proceeding is not determinative'" of this factor's outcome. *Flowers*, 513 F.3d at 559 (quoting *Allstate Ins. Co. v. Green*, 825 F.3d 1061, 1067 (6th Cir. 1987)).

The Sixth Circuit has recently identified three sub-factors that district courts should consider under the fourth factor:

(1)     Whether the underlying factual issues are important to an informed resolution of the case;

(2)     Whether the state trial court is in a better position to evaluate those factual issues than is the federal court

(3)     Whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* (quoting *Bituminous*, 873 F.3d at 814-15).  The Court will address each of these sub-factors in turn.

### 1.     Sub-Factor One: Are the Underlying Factual Issues Important to an Informed Resolution of the Case?

With respect to the first sub-factor, the Court considers "whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action."  *Id.*  The inquiry is necessary because conflicts over the scope of insurance coverage "can sometimes be resolved as a matter of law and do not require factual findings by a state court."  *Brit*, 401 F. Supp. 3d at 815 (quoting *id.*).  In those cases, "the liability issues being determined in the state court proceeding may well be legally, if not factually, distinct from the issues of policy interpretation which are central to the federal declaratory judgment action."  *Flowers*, 513 F.3d at 559.

As the Court discussed above in reference to the first *Grand Trunk* factor, Nautilus' declaratory judgment action cannot be resolved as a matter of law without weighing into factual considerations, especially when considering the scope of indemnity under the Abuse and Molestation Exclusion and the Bodily Injury Definition.  *Supra* part III.B.  The Court has already explained that it would have to make factual findings with respect to the relationships between KC Diamond and both Joey Payne and Jane Doe to determine

indemnity under the Abuse and Molestation Exclusion, and so the same considerations apply here, weighing against the exercise of jurisdiction.  *See id.*

Nautilus argues again with respect to this sub-factor that "the factual issues of the *Doe* lawsuit are not important to the informed resolution of this case except to the extent that this Court would be required to compare the allegations set forth in the *Doe* complaint to the terms of the insurance policy."  (Doc. # 24 at 15).   However, as previously discussed, determining the duty to indemnify goes beyond the complaint, as indemnification "is a question of law to be determined *after* the facts have been determined by a jury."  *White Pine*, 2022 WL 2512771, at *7 (internal citations omitted); *see also Brit*, 401 F. Supp. 3d at 815 (determining that the duty to indemnify cannot be evaluated when fact-bound issues remain unresolved).

Furthermore, another distinction with *Cole's Place* undergirds the Court's conclusion on this sub-factor.  In *Cole's Place*, the Sixth Circuit reasoned that because the policy exclusion in question contained the word "alleged," the court would "need not determine whether facts constituting a battery have been or will be proven."  936 F.3d at 400.   Here, Nautilus' Abuse and Molestation Exclusion contains no such language to exclude all "alleged" instances of abuse or molestation.   While it is true that Mr. Payne has pled guilty to abusing Jane Doe in a criminal proceeding, meaning that the *existence* of abuse is not in question, the *extent* of the abuse and its effects on Jane Doe are very much in question.   In briefing on a Motion for Summary Judgment filed in Boyd Circuit Court, KC Diamond argued that Jane Doe's "damages cannot be recovered as they are unsupported by her own testimony and are mere speculation."  *Jane Doe v. KC Diamond Sports Studio, LLC, et al.*, No. 19-CI-299 (Motion for Summary Judgment, filed August

14, 2020)[7].  In denying that Motion for Summary Judgment, the state court noted that factual issues remain with respect to all claims, including damages.  (Doc. # 22-11 at 2).[8] Thus, the Sixth Circuit's conclusion in *Cole's Place* that "there are no factual issues remaining in the state-court litigation or complex state law issues that are 'important to an informed resolution' of this case" is inapplicable here, as Nautilus' Abuse and Molestation Exclusion and its Bodily Injury Definition do not include a catch-all word like "alleged" which would allow the Court to bypass factual inquiries.  936 F.3d at 400-01 (quoting *Flowers*, 513 F.3d at 560).  For all these reasons, the first sub-factor weighs against the exercise of jurisdiction.

## 2.    Sub-Factor Two: Is the State Court in a Better Position to Evaluate Those Remaining Issues?

"The second sub-factor focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory judgment action."  *Flowers*, 513 F.3d at 560. Courts within the Sixth Circuit "generally consider state courts to be in a better position to evaluate novel questions of state law."  *Cardinal Health*, 29 F. 4th at 799 (quoting *id.*).  However, "if 'the state law is clear and . . . the state court is not considering the [remaining] issues', this subfactor has less force."  *Id.*  Furthermore, the same is true in cases "where the insurer is not a party to the state-court action and the insurance-coverage issue is not before the state court."  *Brit*, 401 F. Supp. 3d at 816 (citing *Flowers*, 513 F.3d at 560).

At first glance, the Court recognizes that this case's circumstances indicate "less force" applied to the second sub-factor.  *Cardinal Health*, 29 F.4th at 799;  *see also id.*

---

[7]      *See supra* note 1.

[8]      *See supra* note 1.

The underlying state court case in this matter is a tort case, containing routine issues and claims.  (*See* Doc. # 1-1).  No "novel questions of state law" arise in the underlying case, and Kentucky law is relatively clear with respect to those tort issues.  Furthermore, Nautilus is not a party to the underlying case, and the specific insurance-related issues are not before the state court.  (*See* Doc. # 1).

However, "even when the issues are not novel, they [may be] questions 'with which the Kentucky state courts are more familiar, and therefore, better able to resolve." *White Pine*, 2022 WL 2512771, at *12 (quoting *Bituminous*, 373 F.3d at 815).  In this context, the Sixth Circuit has advised that "generally, 'states are in a better position to resolve insurance issues governed by state law.'" *Cardinal Health*, 29 F.4th at 800 (quoting *Mass. Bay*, 759 F. App'x at 440;  *see also Flowers*, 513 F.3d at 272 (noting that state courts are "in a better position to resolve the insurance policy interpretation" even when there are "clear indications from the [state] courts regarding how such an issue should be resolved.").

In this case, there is little question as to the Kentucky courts' expertise over the issues presented when compared to the federal courts[9], and the specific facts of this case make that clear.  Generally, the only instances in which this Court deals with state-law based tort issues are in cases of diversity jurisdiction, and those cases almost never involve intentional torts such as battery (stemming from sexual abuse).  Instead, those cases usually involve the negligence of an out-of-state actor such as a large corporation operating a business, and in rarer cases, of federal employees who invoke the Federal Tort Claims Act.  While there are negligence claims central to this case involving KC

---

[9]        *See also infra* note 10.

Diamond's acts and omissions, the crux of the action relates to the abuse Jane Doe suffered at the hands of Joey Payne – an intentional act.  These types of intentional torts are rarely considered in federal courts because intentional acts usually occur between two individuals, and most often between two individuals who reside in the same state, meaning that diversity jurisdiction cannot lie.  Otherwise, this case raises no issues that are directly relevant or consequential to federal interests – in fact, this case itself was brought under diversity jurisdiction, meaning that Kentucky substantive law would apply to the final determination.  (Doc. # 1 ¶4).

Accordingly, the state court is in a better position to evaluate the outstanding issues in this case.  However, considering that the issues are not novel, that Nautilus is not a party to the state court action, and that the insurance issues are not before the state court, the Court will adjudge the third sub-factor to be neutral rather than weighing against the exercise of jurisdiction.

### 3.   Sub-Factor Three: Is There a Close Nexus Between the Underlying Factual and Legal Issues and State Law or Policy?

The third sub-factor "focuses on whether the issue in the federal action implicates important state policies, and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561.  The Sixth Circuit has held that "issues of 'insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve.'"  *Id.* (quoting *Travelers*, 495 F.3d at 273); *accord Mass. Bay*, 759 F. App'x at 440 (collecting cases).

As previously mentioned, this declaratory action was brought under the Court's diversity jurisdiction, and accordingly, all substantive issues are governed by Kentucky law.  Moreover, cases involving intentional torts are rarely heard in federal courts, and

24

case law related to abuse and molestation insurance policy exclusions resides largely in Kentucky state courts.[10]   In the Sixth Circuit, there exists a "preference to allow state courts to answer questions of insurance contract interpretation," *Cardinal Health*, 29 F.4th at 800.  Furthermore, where there are "no federal laws . . . at issue," the third sub-factor "weighs against jurisdiction."  *Mass. Bay*, 759 F. App'x at 440.

Here, no federal laws are at issue, and no federal interests are present that could override the Sixth Circuit's preference of deferring to state courts on insurance issues. When also considering the outstanding factual considerations that would be necessary to decide Nautilus' duty to indemnify, it becomes clear that the nexus is much closer between the issues and Kentucky law than it is between the issues and federal law.  The third sub-factor thus weighs against the exercise of jurisdiction.  With two sub-factors weighing against jurisdiction and one being neutral, the fourth *Grand Trunk* factor cumulatively weighs against the exercise of jurisdiction.

### E.   Factor Five: Is there a Better or More Effective Alternative Remedy Available?

The fifth factor addresses "whether there is an alternative remedy which is better or more effective."  *Mass. Bay*, 759 F. App'x at 441 (quoting *Grand Trunk*, 746 F.2d at 326).  The Sixth Circuit "has sometimes found an alternative remedy is 'better' than federal declaratory relief if state law offers a declaratory remedy or if coverage issues can be litigated in state court indemnity actions."  *Cole's Place*, 936 F.3d at 401 (citing *Bituminous*, 373 F.3d at 816).  However, other courts within this district have also recently noted that "the availability of such alternatives does not necessarily make them better or

---

[10]      *See, e.g.*, *Ritchie v. Turner*, 547 S.W.3d 145 (Ky. Ct. App. 2018); *Goodman v. Horace Mann Ins. Co.*, 100 S.W.3d 769 (Ky. Ct. App. 2003);  *K.M.R. v. Foremost Ins. Grp.*, 171 S.W.3d 751 (Ky. Ct. Ap. 2005).

more effective than federal declaratory actions."  *White Pine*, 2022 WL 2512771, at *14 (quoting *Cincinnati Specialty Underwriters Ins. Co. v. Cent. Ky. Lodging, Inc.*, 565 F. Supp.3d 912, 926 (E.D. Ky. 2021)).  In sum, "the inquiry on this factor 'must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff.'"  *Id.* (quoting *Flowers*, 513 F.3d at 562).

As Nautilus recognizes, it could have filed a state court declaratory judgment action (Doc. # 24 at 18) under KRS § 418.010.  However, in addition to a state court declaratory judgment action, another option exists which was not acknowledged by Nautilus: an indemnity action filed at the conclusion of the state court action.  In *White Pine*, the court noted that "an indemnity action does not appear to be a better or more effective remedy because it would require [the insurance company] to wait until the liability issues are resolved before determining its obligations."  2022 WL 2512771, at *14.  Here, though, the same isn't true, as Nautilus has defended KC Diamond for two years, and the wait until liability issues are resolved is relatively short compared to the time it has already spent on the state court lawsuit. Nonetheless, the Court cannot conclude that such a wait would be "better or more effective" than this case proceeding, as the Court cannot state with certainty when an indemnity action would be concluded as opposed to this action.

With respect to a declaratory judgment action in state court, the same is true – while the remedy is available, it may not be "better or more effective," as the Court cannot be sure that a state declaratory action would be faster or slower than this action. Furthermore, from Nautilus' perspective, because the federal court's diversity jurisdiction exists to provide a more neutral forum to out-of-state defendants, Nautilus may prefer to litigate the issue in state court.  Thus, the Court sees no "better or more effective"

alternative remedy, even though alternatives do exist, and the fifth *Grand Trunk* factor thus weighs in favor of jurisdiction.

## IV.  CONCLUSION

The Sixth Circuit "has never indicated how these *Grand Trunk* factors should be balanced[.]"  *Flowers*, 513 F.3d at 563.  Instead, "[t]he relative weight of underlying considerations of efficiency, fairness, and federalism will depend on the facts of the case." *Hoey*, 773 F.3d at 759.  Here, the first, second, and fourth factors weigh against the exercise of jurisdiction, while the third factor is neutral, and the fifth factor is in favor of the exercise of jurisdiction.  Taking into account the underlying considerations, and for the reasons otherwise stated herein, the Court finds that exercising its discretionary jurisdiction in this matter would be improper.  Accordingly,

**IT IS ORDERED** as follows:

(1)  The Court **DECLINES** to exercise its discretionary jurisdiction over this declaratory judgment action pursuant to 28 U.S.C. § 2201;

(2)  Defendants' Motions to Dismiss (Docs. # 20 and 22) are **GRANTED**; and

(3)  This matter is **DISMISSED** and **STRICKEN** from the Court's active docket.

This 22nd day of July, 2022.



**Signed By:**

*David L. Bunning*

**United States District Judge**

K:\DATA\ORDERS\Ashland Civil\2021\21-63 MOO re Jurisdiction.docx